IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JEFFREY P. COLBY, | ) | |
| | ) | |
| Plaintiff, | ) | 8:04cv52 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| SARPY COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on (1) filing no. 44, the Motion for Summary Judgment filed by defendant-Douglas County; (2) filing no. 49, the Motion for Summary Judgment filed by the plaintiff, Jeffrey P. Colby; (3) filing no. 52, the plaintiff's Motion to Compel discovery from defendant-Sarpy County; (4) filing no. 66, the Motion for Summary Judgment filed by defendant-Sarpy County; and (5) filing no. 76, the plaintiff's Motion to Clarify the docket entries for filing nos. 70-73. In his complaint, as amended and supplemented, the plaintiff asserts claims pursuant to 42 U.S.C. § 1983, alleging that Douglas and Sarpy Counties, Nebraska caused him to be held over for 120 days in the Douglas County Correctional Center ("DCCC") awaiting transfer to Sarpy County to answer charges there, after he had been released from any charges by Douglas County. When finally transferred to Sarpy County, the plaintiff was acquitted of the Sarpy County charges, after having spent four months in the DCCC for no good reason.

## PLRA

The plaintiff filed this action on February 9, 2004, at which time he was again in the DCCC on different charges. The Prison Litigation Reform Act ("PLRA") defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h). The status of the plaintiff at the time the lawsuit is initiated, i.e., whether the plaintiff is incarcerated when the complaint is filed, determines whether the PLRA applies to a case. See, e.g., Royal v. Kautzky, 375 F.3d 720, 724 n. 2 (8th Cir. 2004) (noting that a complaint about prison conditions filed by a former prisoner *after* the plaintiff has been released from prison takes the case outside of the PLRA).

Although the plaintiff filed this action long after his release from custody on the charges which led to his imprisonment in this case, he was nonetheless again a prisoner when he filed his complaint   Thus, because the plaintiff's status was that of a "prisoner" when he began this case, the PLRA applies to this litigation. That is so even though he has since been released again.

1

**Background**

On April 15, 2002, Sarpy County District Judge Ronald Reagan issued a capias[1] (filing no. 57, Exh. A) with directions to arrest and hold the plaintiff because of his failure to appear on that date to answer a previous charge of making terroristic threats. On May 6, 2002, Douglas County Sheriff's deputies arrested the plaintiff in Omaha, Douglas County, Nebraska, on the Sarpy County warrant. The circumstances surrounding that arrest led to a separate charge in Douglas County of resisting arrest. After pleading guilty on May 7, 2002 to the offense of resisting arrest, the plaintiff received a sentence of one day of imprisonment with credit for time (one day) already served. At that point, Douglas County had no other legal basis to hold the plaintiff except to transfer him to Sarpy County on the capias. The plaintiff was taken to the DCCC subject to the "hold," i.e., detainer, in favor of Sarpy County.

However, instead of promptly arranging for the plaintiff's release to Sarpy County, DCCC lost track of why the plaintiff was present at DCCC. The plaintiff thereafter remained in the DCCC for approximately four months.

According to the Affidavits of DCCC corrections officers Sergeant Morrison (filing no. 46, Exh. 2) and Captain McPhillips (filing no. 80, Exh. 1), the DCCC lost the plaintiff's transfer order. McPhillips stated that the plaintiff's transfer order to Sarpy County was "inadvertently" "misplaced" as the result of a "clerical error." Morrison reported that on September 2, 2002, "while going through folders," he discovered that the plaintiff "should have been sent to Sarpy County on 5/7/02." More specifically, Morrison stated:

> On 5/7/02, @ 1903 inmate Colby, Jeffrey was booked by Officer Selby, Wm, new from the courts. Officer Selby booked Colby a $3500 or 10% Bond for resisting arrest and a hold for Sarpy County. On 9/2/02, I was checking folders and found a release form for resisting arrest for case # CR02-14248. This form was at the bottom of the pile of paperwork on the left side of the folder. This release order was dated 5/7/02. According to the paperwork that I found on 9/2/02, inmate Colby should have been booked for a Sarpy Hold only and Sarpy should have been notified on 5/7/02 ....

The plaintiff makes the valid point that in a facility with constitutionally acceptable policies and proper internal controls, a mere clerical error would not lead to a wholly unjustified four-month incarceration. In his pleadings (e.g., filing nos. 49, 50 and 60), the plaintiff points to policies and practices which proximately caused or contributed to his

---

[1] A "capias" is defined as "[a]ny of various types of writs that require an officer to take a named defendant into custody. A capias is often issued when a respondent fails to appear...." Black's Law Dictionary (8th ed. 2004). Thus a capias is in the nature of a bench warrant issued by a judge, typically for failure to appear before the court at the time and place previously ordered.

extended and unwarranted detention. According to the plaintiff, DCCC rarely reviews, reassesses or reclassifies the status of inmates once they have been admitted.  Also, DCCC staff are inadequately trained, and record-keeping at the jail is abysmal.

## Sarpy County

As stated, after the plaintiff failed to appear for his arraignment in Sarpy County on charges of making terroristic threats and other offenses, the court issued a capias, which is not a separate charge requiring the presence of an accused before a judge within a statutory period or without unnecessary delay.  As the plaintiff does not contend that Sarpy County filed any formal charge against him for the failure to appear, he has not demonstrated that Sarpy County had a constitutional duty or statutory time limit within which to arraign the plaintiff or otherwise bring him before a judge in Sarpy County after Douglas County had arrested him.

It is true that "the Due Process Clause forbids an extended detention, without a first appearance, following arrest by warrant." Hayes v. Faulkner County, 388 F.3d 669, 673 (8th Cir. 2004).  The plaintiff protests that he did not receive a bond hearing or any other procedural due process while he waited in DCCC for Sarpy County to retrieve him.  However, in the absence of a new charge in Sarpy County of failure to appear, the plaintiff did not have to be taken before a judicial officer in Sarpy County within any particular time frame or without unnecessary delay for a probable cause hearing or arraignment.

In addition, the parties differ as to whether anyone in Sarpy County actually knew that the plaintiff was in the DCCC prior to September 4, 2002, when DCCC officials formally notified Sarpy County personnel to take possession of the plaintiff.  The plaintiff points to the Confirmation Response attached to the Omaha Police Department Detainer Form (filing no. 46 at pages 3-4).  The Confirmation indicates that on May 6, 2002 at 21:45, an individual named "Wallace" at telephone number "(402) 593-4111" confirmed on behalf of "Sarpy County Communications" receipt of notice that Jeffrey Colby, a "wanted person," had been detained.

On the other hand, the Sarpy County Sheriff states that his office had no record of Douglas County's detention of the plaintiff on a hold for Sarpy County until DCCC personnel placed telephone calls on September 2, 2002 (filing no. 64, Affidavit of Jeff Davis, at ¶ 8).  In either event, even assuming that someone in Sarpy County knew of the plaintiff's detention at the DCCC, there is no evidence in the record that anyone in Sarpy County knew that Douglas County was holding the plaintiff **only** for the benefit of Sarpy County.  Even Douglas County did not realize that it lacked an independent basis to hold the plaintiff on Douglas County charges.  Thus, Sarpy County personnel had no reason to retrieve the plaintiff until notified by Douglas County that Douglas County had released him to the jurisdiction of Sarpy County.

Because the record reveals no reason for Sarpy County to know that Douglas County had lost jurisdiction of the plaintiff on the Douglas County charge and that Douglas

County lacked a lawful basis for detaining the plaintiff in its own right, Sarpy County had no obligation to inquire of DCCC personnel why the plaintiff was still at DCCC and when he would be released or could be transferred. Thus, Sarpy County correctly contends that it bore no responsibility for the four-month period the plaintiff spent in the DCCC before his transfer to Sarpy County. Accordingly, filing no. 66, the Motion for Summary Judgment filed by Sarpy County, will be granted, and Sarpy County will be dismissed from this litigation. As a result, filing no. 52, the plaintiff's Motion to Compel discovery from Sarpy County will be denied as moot.

## Douglas County

Plaintiff's Constitutional Rights

Douglas County contends that the plaintiff has failed to state a claim of constitutional magnitude on which relief could be granted. However, in Davis v. Hall, 375 F.3d 703, 712-13 (8th Cir. 2004), the plaintiff stated a constitutional violation pursuant to both the Eighth Amendment and the Due Process Clause when he alleged that he had been detained for 57 days after a judge had ordered his release.

"As our cases teach, in order for [the plaintiff] to prove his due process rights were violated and that the County should be held responsible, he must show both that his detention shocks the conscience and that it was caused by a county policy or custom evidencing a level of culpability akin to criminal recklessness." Id., *citing* Russell v. Hennepin County, 420 F.3d 841(8th Cir. 2005); Golberg v. Hennepin County, 417 F.3d 808 (8th Cir. 2005); Luckes v. Hennepin County, 415 F.3d 936 (8th Cir. 2005).

In addition, deliberate indifference can be demonstrated where prison officials were put on notice and then simply refused to investigate a prisoner's claim that he was entitled to be released. A "pattern of official tolerance by the County concerning delays in release" could ... "give rise to a due process violation" or "result[] from the sort of intentionally harmful or reckless conduct needed for a showing of deliberate indifference" in violation of the Eighth Amendment. Lund v. Hennepin County, 427 F.3d 1123, 1127 (8th Cir. 2005) (outprocessing procedures creating only a twelve-hour delay in release from custody did not amount to a violation of due process or the Eighth Amendment).

Thus, an extended detention of an individual after he is entitled to release can violate the Due Process Clause or the Eighth Amendment. As in the plaintiff's case, a policy of deliberate indifference to the due process rights of detainees can be actionable if harm results. Hayes v. Faulkner County, 388 F.3d 669, 674 (8th Cir. 2004). Whether a custom or policy caused the plaintiff's constitutional injury is an issue for a jury to decide. In this case, the plaintiff suggests that besides the deficiencies at DCCC in intake screening and record-keeping, lack of verification of paperwork and absence of subsequent inmate assessment, a practice as simple as just listening to inmates and documenting complaints could have averted the constitutional deprivation of which he complains.

4

Exhaustion of Remedies

42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies before a prisoner files suit in federal court about conditions or events in prison. 42 U.S.C. § 1997e(a) states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) means that if grievance procedures were available to the plaintiff at the DCCC, and the plaintiff did not use the available grievance procedures before filing this lawsuit, the plaintiff's claims may be subject to dismissal without prejudice.

On the other hand, the purposes for exhaustion cannot be served if grievance procedures are in reality unavailable to a prospective plaintiff. See, e.g., Lyon v. Vande Krol, 305 F.3d 806, 808-09 (8th Cir. 2002): "For instance, in Foulk v. Charrier, 262 F.3d 687, 697-98 (8th Cir. 2001), [the Eighth Circuit] concluded that the district court lacked a sufficient factual basis to find that an inmate had failed to exhaust his administrative remedies when prison officials had refused to respond to his informal resolution request that he completed to satisfy the requirements of the first part of the prison's three-part grievance process. In Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001), [the Eighth Circuit] similarly held that an inmate was prevented from exhausting his administrative remedies when prison officials failed to respond to his requests for grievance forms, and that the inmate's failure to exhaust those remedies was not a bar to suit because they were not 'available' to him."

In this case, the plaintiff points out discrepancies and omissions in his inmate file produced by Douglas County, and he contends that he did exhaust his administrative remedies to the extent permitted by corrections officers at DCCC (e.g., filing nos. 72 and 78). The plaintiff also alleges that DCCC staff obstructed his efforts to obtain grievance forms. As the court may not weigh the evidence, determine credibility, or decide the truth of any factual matter in dispute in the context of summary judgment motions, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Tatum v. City of Berkeley, 408 F.3d 543, 549 (8th Cir. 2005), whether 42 U.S.C. § 1997e(a) bars the plaintiff's claims against Douglas County cannot be decided on the summary judgment record and will be deferred until the trial of this matter.

## Limits on Available Remedies

The plaintiff seeks damages for his unjustified detention. He also seeks injunctive relief, asking the court to "punish" Douglas County. Construed liberally, the plaintiff may also be asking for affirmative injunctive relief to require Douglas County, in particular, to develop internal procedures to track whether inmates present at DCCC should actually be there and to account for inmates at DCCC awaiting transfer elsewhere.

Damages for Emotional Distress

As I have previously explained (filing no. 38 at 1-2), the PLRA prevents the plaintiff from recovering damages for mental and emotional suffering attributable to the delay in his transfer from the DCCC to Sarpy County, as the plaintiff incurred no physical injury. See 42 U.S.C. § 1997e(e): "Limitation on recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Eighth Circuit explained in Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004): "The majority of courts hold section 1997e(e)'s limitation on damages applies to all federal prisoner lawsuits .... We join the majority, concluding Congress did not intend section 1997e(e) to limit recovery only to a select group of federal actions brought by prisoners. Instead, we read section 1997e(e) as limiting recovery for mental or emotional injury in all federal actions brought by prisoners." On the other hand, 42 U.S.C. § 1997e(e) does not preclude nominal or punitive damages or other kinds of relief. "To the extent [the plaintiff] argues nominal damages, punitive damages, and injunctive and declaratory relief are available to him, we agree. Congress did not intend section 1997e(e) to bar recovery for all forms of relief." Id.

Punitive Damages

In this case, however, the plaintiff could not recover punitive damages because he has sued only political subdivisions, but no employees of the governmental units. In City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981), the U.S. Supreme Court held that punitive damages could be awarded against municipal employees, but not against the governmental entity itself. The Court stated:

> In sum, we find that considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials. Because absolute immunity from such damages obtained at common law and was undisturbed by the 42d Congress, and because that immunity is compatible with both the purposes of § 1983 and general principles of public policy, we hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983.

Injunctive Relief

In filing no. 84, the plaintiff indicates that he has been discharged from custody. As the plaintiff is not presently incarcerated, the remedy of injunctive relief would not be available to require a defendant to improve its policies and procedures to prevent future delays in release or transfer of the kind the plaintiff experienced. Injunctive relief may not be recovered to improve conditions at a prison from which the plaintiff has been transferred or released. "A claim for equitable relief is moot 'absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.'" Randolph v. Rodgers, 170 F.3d 850, 856-57 (8th

6

Cir. 1999). When "an inmate has been transferred to another institution, his claim for injunctive relief against the warden of the first prison to improve the former prison's conditions is moot." Id. at 857, *citing* Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985). The same is true after release from confinement.

## Conclusion

Therefore, this case will proceed with Douglas County as the sole defendant. The plaintiff has stated a claim on which relief may be granted against Douglas County. However, it remains to be determined whether 42 U.S.C. § 1997e(a) bars the plaintiff's claim against Douglas County. In addition, because of 42 U.S.C. § 1997e(e) of the PLRA and other restrictions on available remedies, the plaintiff, if he prevails, would be limited to a declaratory judgment and nominal damages.

THEREFORE, IT IS ORDERED:

1. That filing no. 44, Douglas County's Motion for Summary Judgment, and filing no. 49, the plaintiff's Motion for Summary Judgment, are denied, in that genuine issues of material fact remain for trial;

2. That filing no. 66, Sarpy County's Motion for Summary Judgment, is granted; Sarpy County is dismissed from this litigation with prejudice, and filing no. 52, the plaintiff's Motion to Compel discovery from Sarpy County, is denied as moot; and

3. That filing no. 76, the plaintiff's Motion to Clarify the docket entries for filing nos. 70-73, is granted, and the clarifications are noted.

DATED this 1st day of March, 2006.

BY THE COURT:

s/ Warren K. Urbom
United States Senior District Judge